FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JAN 14 P 1:00

CLERK'S OFFICE
AT BALTIMORE

BY ___ DEPUTY

SW/JTM: USAO# 2009R00750

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. WDQ-14-017 |
| v. | * | |
| | * | (Conspiracy to Use Fire To Commit a |
| HASSAN HAMMOUD, | * | Federal Felony, 18 U.S.C. § 844(m); Use |
| | * | of Fire to Commit a Federal Felony, |
| Defendant | * | 18 U.S.C. § 844(h)(1); Aiding and |
| | * | Abetting, 18 U.S.C. § 2) |
| | * | |

*******

### INDICTMENT

### COUNT ONE
(Conspiracy)

#### Introduction

At all times relevant:

1.  Defendant **HASSAN HAMMOUD** was a resident of Dundalk, Maryland. At times, **HAMMOUD** worked for SF, the owner of a pizza shop, located at Mondawmin Mall, Baltimore, Maryland.

2.  SF and his wife were the owner of 11201 Greenspring Avenue, in Lutherville, Maryland, 21093 (hereinafter "the Maryland home"). In or about July 2007, SF and his wife moved to Florida and used the Florida home as their primary residence.

3.  From in or about August 2008 through in or about March 2009, SF was in substantial financial debt. He owed approximately $1.7 million dollars to various banks for the mortgages for the properties he owned and owed various unsecured creditors including credit cards, utilities and other service providers in an approximate amount of over $200,000. His

1

reported income could not support the debt he had incurred over the years.

4. Great Northern Insurance Company (hereinafter "Great Northern") is an insurance company authorized to transact business in Maryland, said business being the sale of property and casualty insurance policies. Great Northern's insurance business is managed by Chubb & Son, a division of Federal Insurance Company (hereinafter "Chubb & Son").

5. At or about the time the Maryland home was purchased, SF and his wife purchased a homeowner's insurance policy from Great Northern (hereinafter "insurance policy"). In November 2008, the insurance policy was for "deluxe coverage" in the amount of $1,554,000 (dwelling) and included "extended replacement cost." According to the policy, "extended replacement cost" is defined as follows: in the event of a covered loss, Great Northern would pay the reconstruction cost of the house even if the amount were greater than the amount of coverage for the house. The policy on the contents of the house was for "replacement cost" in the amount $777,000. According to the insurance policy, "replacement cost" is defined as follows: in the event of a covered loss, Chubb & Sons would pay the full cost to replace the contents without deduction for depreciation, or the amount required to repair the damage, whichever is less, up to the amount of the coverage.

6. The insurance policy excluded from coverage "any loss caused intentionally by [the insureds] ....or by a person directed by [the insureds]." According to the policy, "an intentional act is one whose consequences could have been foreseen by a reasonable person." A general condition of the insurance policy further bars insurance coverage if the insured "or any covered person has intentionally concealed or misrepresented any material fact relating to [the] policy before or after a loss."

2

## THE ARSONS

7. Prior to March 12, 2009, SF and **HAMMOUD** discussed burning the Maryland home. **HAMMOUD** agreed to a plan to set fire to the Maryland home in exchange for money to be paid by SF.

8. On or about March 12 or 13, 2009, a fire was deliberately set at the Maryland home. The fire self-extinguished and the property sustained minimal damage. The fire was not reported to the local police or fire department.

9. On or about March 15, 2009, at some time prior to 4:09 a.m., a second fire was deliberately set using an ignitable liquid at the Maryland home. The property was completely destroyed.

## THE CLAIMS

10. At approximately 11:55 a.m. on or about Friday, March 13, 2009, SF placed an interstate call to the claims center for Great Northern and stated in words or substance that his "contractor doing repairs has now discovered an electrical problem at his home."

11. At approximately 5:33 p.m. on or about March 15, 2009, SF called the Great Northern claim center and reported the second fire; thereby causing the claim center to generate an email which traveled in interstate commerce to document the claimed loss.

12. In or about September 2009, SF and his wife executed a Sworn Proof of Loss for Contents and Structure (hereinafter "Proof of Loss") and provided it to Chubb & Son seeking $2,233,775.62 for the Maryland home ("dwelling") and $921,422.22 for the contents of the home. The sworn Proof of Loss was materially false and fraudulent and failed to disclose and concealed from Great Northern the fact that SF and **HAMMOUD** caused the fires at the Maryland home.

13. On or about September 22, 2010, Great Northern denied the claim but paid

approximately $828,773 to Chase Manhattan Bank, the mortgagor of the Maryland home.

## MANNER AND MEANS OF THE CONSPIRACY AND SCHEME TO DEFRAUD

14. Section 1343 of Title 18 prohibits any person from devising a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, or wilfully participating in such a scheme with knowledge of its fraudulent nature, and with the intent to defraud, and in furtherance of the scheme, cause to be transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce.

15. It was part of the conspiracy and a scheme to defraud Great Northern that **HAMMOUD** agreed together with SF to unlawfully obtain insurance proceeds by setting fire to SF's Maryland home in March 2009.

16. It was part of the conspiracy and a scheme to defraud that **HAMMOUD** caused the Maryland home to be set on fire.

17. It was further part of the conspiracy and a scheme to defraud that **HAMMOUD** and SF made false and fraudulent statements to law enforcement so that SF could obtain insurance proceeds to which SF was not entitled.

18. It was further part of the conspiracy and the scheme to defraud that SF and **HAMMOUD** used and caused to be used interstate wires in order to communicate with one another regarding the arsons and with Great Northern about the claimed loss.

19. It was a further part of the scheme to defraud that **HAMMOUD** and SF would unlawfully benefit from the insurance policy on the Maryland home.

## THE CHARGE

20. From at least in or about March 4, 2009 and continuing through on or about March 15, 2009, the defendant,

## HASSAN HAMMOUD

conspired and agreed with SF and others known and unknown to the Grand Jury to commit an offense under Title 18, United States Code, Section 844, subsection (h)(1); to wit, using fire to commit wire fraud, a felony prosecutable in a court of the United States under Title 18, United States Code, Section 1343.

18 U.S.C. § 844(m)

## COUNT TWO
### (Use of Fire to Commit a Federal Offense)

1. The allegations contained in Paragraphs 1 through 19 of Count One are incorporated here.

2. From at least in or about March 4, 2009 and continuing through on or about March 15, 2009, the defendant,

### HASSAN HAMMOUD

knowingly used fire to commit wire fraud, a felony prosecutable in a court of the United States under Title 18, United States Code, Section 1343.

18 U.S.C. § 844(h)(1)

Rod J. Rosenstein
United States Attorney

A TRUE BILL:
**SIGNATURE REDACTED**
Foreperson

1/14/14
Date

6